**IN THE FEDERAL DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| Wake 10, LLC | ) | |
| a Kansas Limited Liability Company | ) | Civil Action No:   2:24-cv-2194 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT FOR DECLARATORY** |
| v. | ) | **JUDGEMENT FOR NON-** |
| | ) | **INFRINGEMENT AND INVALIDITY** |
| | ) | |
| Swell Ventures LLC   d.b.a. Swell Wakesurf | ) | **Demand for Jury Trial** |
| a Minnesota Limited Liability Company | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

<u>**COMPLAINT**</u>

Plaintiff Wake 10, LLC ("Wake 10"), by and through their attorneys, hereby file the following complaint for Declaratory Judgement of Non-Infringement and/or Invalidity of U.S. Patent No. 11,840,317 owned by Defendant Swell Ventures LLC ("Swell"), and alleges as follows:

<u>**PARTIES**</u>

1.      Plaintiff Wake 10 is a Kansas limited liability company in active and good standing with a place of business at 1441 King St. Hoxie, KS 67740.

2.      Upon information and belief, Defendant Swell is a Minnesota limited liability company with its primary place of business at 2330 Leibel St. Suite 101, White Bear Lake, MN 55110.

1

## JURISDICTION AND VENUE

3.     This Declaratory Judgement Complaint includes counts for declaratory relief and invalidity under the United States Patent Laws codified at 35 U.S.C. §§1, *et seq.*

4.     Wake 10 seeks declaratory relief under 28 U.S.C. §§ 2201 and 2202.

5.     This Court has subject matter jurisdiction over the claims alleged in this action under 28 U.S.C. §§ 1331, 1332, 1338, 2201, and 2202 because this Court has exclusive jurisdiction over declaratory judgement claims arising under the patent laws of the United States pursuant to 28 U.S.C. §§ 1331, 1338, 2201, and 2202.  Diversity jurisdiction is also proper because Wake 10 and Swell are citizens of different states and the value of the controversy exceeds $75,000.

6.     This Court can provide the declaratory relief sought in this Declaratory Judgement Complaint because an actual case and controversy exists between the parties within the scope of this Court's jurisdiction pursuant to 28 U.S.C. §2201.  An actual case and controversy exists because Swell has accused Wake 10 several times of infringing Swell's patents, and has initiated an Amazon Patent Evaluation Express (APEX) Procedure against Wake10.  As discussed below, this process has been initiated by Swell and one of the only ways in which Wake 10 can maintain its non-infringing products on the Amazon platform is to provide evidence of a Complaint for Declaratory Judgement for Non-infringement to have been filed against Swell by Wake 10, and because Wake 10 does not infringe and has never infringed any claims of the Swell Patents, and therefore has a right to engage in the complained-of activity.

7.     This Court has personal jurisdiction over Swell because Swell has engaged in actions, including that it has transacted business, in this District, and these actions form the basis for Wake 10's claims against Swell and have created a real, live, immediate and justiciable case

or controversy between Swell and Wake 10.  The details relating to Swell's actions to create this controversy are described in further detail below.  Were Swell to initiate its own Complaint for Patent Infringement at any point in the future[1], this District would also be the only District which would be proper for such a claim against Wake 10 pursuant to the decision in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 581 US _____; 137 S.Ct. 1514 (2017).

8.      Swell has consciously and purposely directed allegations of infringement, including demand letters and infringement charts, to Wake 10, as well as having initiated the APEX Procedure against Wake 10.

9.      As outlined below, Swell has harassed and attacked Wake 10's business since Wake 10's inception, all aimed at Wake 10's presence in this District.

10.     Swell products are offered for sale in this District on a daily basis, and Swell advertises in this District.

11.     Swell has established sufficient minimum contacts with the District of Kansas, such that Swell is subject to specific personal jurisdiction here.  Further, the exercise of personal jurisdiction based on these repeated and highly-pertinent contacts does not offend traditional notions of fairness and substantial justice.

12.     Specifically, Swell's actions that give rise to this action are based on Swell's actions that occurred in the District of Kansas, meeting the minimum contacts analysis and satisfying K.S.A. §60-308.

13.     Venue is proper in this district under 28. U.S.C. §§1391 and 1400, including because under Tenth and Federal Circuit law, venue in declaratory judgement actions for noninfringement of patents is determined under the general venue statue, 28 U.S.C. §1391.

---

[1] It is an almost certainty that Swell would include such a counterclaim for infringement against Wake 10 as part of its Answer to this Complaint, wherein venue would only be proper in this District as well.

## FACTUAL BACKGROUND

14.     Wake 10 was formed in 2018 for the purposes of selling marine sport accessories. Wake 10 first launched on June 25, 2019.

15.     Wake 10 filed for its U.S. Trademark Registration No. August 15, 2018.  Wake 10 subsequently filed its statement of use in commerce on July 1, 2019.

16.     Wake 10 first offered its "Wakesurf Creator" product for sale on June 25, 2019. Almost immediately, Swell targeted Wake 10 using deceptive tactics.

17.     On July 2, 2019, Adam Moore, who is labeled as Manager of Swell in its Minnesota Secretary of State filings, purchased a Wake 10 "Wakesurf Creator" product. (Exhibit A)

18.     On July 22, 2019, Swell left a 1-star negative review on Wake 10's Amazon product listing for the "Wakesurf Creator" product.  This activity is a violation of the Amazon Community Guidelines and an Amazon Seller Terms of Service violation.  They did so under the username "Amazonian."  On July 25, 2019, Wake 10 learned that it was Swell who left the negative review because Swell left a link to their website in the "Amazonian" username reviewer profile. Exhibit B.

19.     On the same day, the "Wakesurf Creator" product purchased by Swell on July 2, 2019, was returned and a refund was requested.  Exhibit C.

20.     On July 29, 2019, the "Amazonian" username was changed back to "Swell Wakesurf," and updated on the negative user review.  Exhibit D.

21.     On August 4, 2019, Swell realized their mistake and changed their Amazon Review Profile username to "Amazon1" and removed the link to their website from their profile. Exhibit E.

4

22.     On October 16, 2019, Adam Moore on behalf of Swell sent a contact form request through Wake 10's website under the false name "Adam Jones," claiming that he needed to return a part purchased from Wake 10.  Exhibit F.

23.     On October 17, 2019, Wake 10 responded to Adam Moore's request honestly. Mr. Moore responded with his address for replacement suction cups, which alerted Wake 10 immediately as to the true identity of Mr. Moore.  The conversation that followed through multiple emails that day indicated Swell desired to take legal action against Wake 10.  Exhibit G.

24.     On October 24, 2019, Swell sent a letter to Wake 10 claiming trademark infringement, copyright infringement, trade dress infringement, and patent infringement, all without merit.  Exhibit H.   On October 30, 2019, Wake 10 replied to that letter.  Exhibit I

25.     On several dates between at least September 14, 2019 and March 6, 2020, Nauticurl posted photographs of their Nauticurl Flex Wakeshaper product (the "Nauticurl Flex") on their social media that extremely resembles the X4 Pro.[2]  Several more posts occurred thereafter.  Exhibit J.[3]

26.     On March 13, 2020, Swell filed U.S. Patent Application No. 16/818,824 (the "'824 Application"), which is the parent application to the '317 Patent.

27.     On July 20, 2020, Wake 10 launched a new product: a 50lb Ballast Bag.

28.     On August 27, 2020, Swell purchased two units of the Wake 10 50lb Ballast Bag product through Wake 10's Amazon storefront (Amazon Order No. 111-3466168-9717869). Exhibit A.

---

[2] This would appear to render any patent that would cover the X4 Pro obvious under 35 U.S.C. §103.  Exhibit O.
[3] Links to these postings can be found within the Exhibit.  The product appears to have been offered for sale beginning in February, 2020.

29.     On or about May 27, 2021, Swell began selling a 50lb Ballast Bag which strongly resembles Wake 10's 50lb Ballast Bag product.  Exhibit K

30.     On or about October 23, 2020, Wake 10 began designing the "Wakesurf Creator X4 Pro" product (the "X4 Pro").  Wake 10 began selling the X4 Pro on or about May 17, 2021[4]

31.     On January 17, 2022, U.S. Patent Application No. 17/577,261 was filed by Swell as a continuation of and claiming priority in the '824 Application.

32.     On January 18, 2022, the '824 Application issued as U.S. Patent No. 11,255,307, parent patent to the '317 Patent.

33.     On June 16, 2023, Wake 10 filed a third-party submission to the United States Patent and Trademark office citing the existence of its X4 Pro product as prior art against U.S. Patent Application No. 17/577,261 (the "'261 Application"), which became the '317 Patent.

34.     On December 12, 2023, the '261 Application issued as the '317 Patent.

35.     On April 8, 2024, counsel for Swell emailed a letter to Wake 10 accusing Wake 10's "Wakesurf Creator X4 Pro" product (the "X4 Pro") of infringing U.S. Patent No. 11,840,317 (the "'317 Patent"), along with claims in a pending U.S. Patent Application Pub. No. 2024/0076015, and including a claims chart detailing its position.  Exhibit L.  On April 19, 2024, counsel for Wake 10 sent a letter in response to counsel for Swell, including a claims chart identifying the ways in which the X4 Pro cannot infringe the '317 Patent.  Exhibit M.

36.     During this timeframe, on April 15, 2024, Wake 10 received an email notification from patent-evaluation@amazon.com regarding an Amazon Patent Evaluation Express (APEX) Procedure initiated by Swell.  Exhibit N.  This notification indicated that responding with a complaint filed for declaratory judgement of non-infringement would prevent Wake 10's

---

[4] It should be noted that that U.S. Patent No. 11,225,307, the parent patent to the '317 Patent, was not published until September 16, 2021, after the X4 Pro was released.

products from being removed from Amazon, which would cause a huge financial burden to Wake 10's business.  Such response is due within three (3) weeks of the APEX Procedure notification.

37.     Counsel for the parties have been in ongoing discussions during this timeframe.

**United States Patent No. 11,840,317**

38.     The '317 Patent is entitled "Water Flow Deflection Device for a Watercraft and Methods of Use."  It issued on December 12, 2023 from an application filed on January 17, 2022, as a continuation application of U.S. Patent Application No. 16/818,824, filed on March 13, 2020, now U.S. Patent No. 11,225,307.  It recites fifty-five (55) claims, with only claims 1, 21, and 37 being independent.

39.     Claim 1 of the '317 Patent reads:

•     A water flow deflection device configured to be attached to a side of a watercraft for the enhancement of a watercraft wake, the water flow deflection device comprising:

an elongated base with a first end and a second end, the elongated base having an elongated base width and being configured to be aligned along the side of the watercraft when the water flow deflection device is attached to the watercraft;

a deflector attached to the elongated base between the first and second ends of the elongated base at an off-center position relative to the first and second ends, the deflector comprising a deflector face spanning between a leading end and an opposing trailing end, the leading end extending outwardly from the elongated base at an acute angle, the deflector face having a surface area configured to deflect water, at least one portion of the deflector having a deflector width that is greater than the elongated base width, and the leading end being in closer proximity to the watercraft than the opposing trailing end when the water flow device is attached to the watercraft; and

at least three suction cup assemblies attached to the elongated base located between the first end and the second end, wherein two or more suction cup assemblies of the at least three suction cup assemblies being attached to the elongated base between the first end and the leading end of the deflector, such that a greater number of the at least three suction cup assemblies being attached between the first end and the leading end of the deflector than between the second end and the leading end of the deflector, and wherein the at least three suction cup assemblies configured to provide removable attachment of the elongated base to the watercraft.

40.     Claim 21 of the '317 Patent reads:

•     A water flow deflection device configured to be attached to a side of a watercraft for the enhancement of a watercraft wake, the water flow deflection device comprising:

an elongated base with a first end and a second end, the elongated base having an elongated base width and being configured to be aligned along the side of the watercraft with the first end towards the bow of the watercraft and the second end towards the stern of the watercraft when the water flow deflection device is attached to the watercraft;

a deflector attached to the elongated base between the first and second ends of the elongated base at an off-center position relative to the first and second ends, the deflector comprising a deflector face spanning between a leading end and an opposing trailing end, the leading end extending outwardly from the elongated base at an acute angle, the deflector face having a surface area configured to deflect water, at least one portion of the deflector having a deflector width that is greater than the elongated base width, and the leading end being in closer proximity to the watercraft than the opposing trailing end when the water flow device is attached to the watercraft; and

at least three suction cup assemblies attached to the elongated base between the first end and the second end, wherein three or more suction cup assemblies of the at least three suction cup assemblies being located between the first end of the elongated base the leading end of the deflector, such that a greater number of the at least three suction cup assemblies being attached between the first end and the leading end of

8

the deflector than between the second end and the leading end of the deflector, and wherein the at least three suction cup assemblies configured to provide removable attachment of the elongated base to the watercraft.

41.     Claim 37 of the '317 Patent reads:

•     A water flow deflection device configured to be attached to a side of a watercraft for the enhancement of a watercraft wake, the water flow deflection device comprising:

an elongated base with a first end and a second end, the elongated base having an elongated base width and being configured to be aligned along the side of the watercraft when the water flow deflection device is attached to the watercraft;

a deflector attached to the base between the first and second ends of the elongated base at an off-center position relative to the first and second ends, the deflector comprising a deflector face spanning between a leading end and an opposing trailing end, the leading end extending outwardly from the elongated base at an acute angle, the deflector face having a surface area configured to deflect water, at least one portion of the deflector having a deflector width that is greater than the elongated base width, and the leading end being in closer proximity to the watercraft than the opposing trailing end when the water flow device is attached to the watercraft; and

at least four suction cup assemblies attached to the elongated base located between the first end and the second end, wherein at least three suction cup assemblies of the at least four suction cup assemblies being attached to the elongated base between the first end and the leading end of the deflector, and at least one suction cup assembly of the at least four suction cup assemblies being attached to the elongated base between the second end and the leading end of the deflector, such that a greater number of the at least four suction plate assemblies being attached between the first end and the leading end of the deflector than between the second end and the leading end of the deflector, and wherein the at least four suction cup assemblies configured to provide removable attachment of the elongated base to the watercraft.

42.     Swell has stated that the '317 Patent covers the X4 Pro's functionality.

43.     Swell has enacted the APEX Procedure through Amazon.com based upon the '317 Patent.

**FIRST CLAIM FOR RELIEF**

**Declaratory Judgement of Non-Infringement of the '317 Patent by Wake 10**

44.     The allegations contained in the preceding paragraphs are incorporated herein.

45.     Swell has threatened Wake 10 with suits for alleged infringement of the '317 Patent and has actively initiated an APEX Procedure through Amazon.com against Wake 10 thereupon.  Swell has sent communication, including claims charts and demands for Wake 10 to cease and desist sales of the X4 Pro.

46.     As a result, there is an actual, justiciable, substantial, and immediate controversy between Wake 10 and Swell, regarding whether the X4 Pro or any of Wake 10's products infringe the '317 Patent.

47.     Wake 10's X4 Pro does not infringe claims 1, 21, or 37 of the '317 Patent, and therefore cannot infringe any of the claims of the '317, nor do any of Wake 10's products.

48.     For example, the X4 Pro does not have the requisite structural configuration required by claims 1, 21, and 37 of the '317 Patent.  For instance, the X4 Pro do not satisfy the elements of claims 1, 21, and 37 of "a deflector attached to the elongated base between the first and second ends of the elongated base at an off-center position relative to the first and second ends," "the deflector … leading end extending outwardly from the elongated base at an acute angle," and "wherein at least two [or three] of the at least three suction cup assemblies being attached to the elongated base between the first end and the leading end of the deflector . . . such that a greater number of the at least three suction cup assemblies being attached between the first end and the leading end of the deflector than between the second end and the leading end of the

deflector."  Regarding claim 37, the X4 Pro does not satisfy the element of "at least one suction cup assembly of the at least four suction cup assemblies being attached to the elongated base between the second end and the leading end of the deflector."

49.     Wake 10 is entitled to a judgement declaring that Wake 10 does not infringe the '317 Patent.

## SECOND CLAIM FOR RELIEF

### Declaratory Judgement of Invalidity of the '317 Patent by Wake 10

50.     The allegations contained in the preceding paragraphs are incorporated herein.

51.     The '317 is a continuation application which was filed after Wake 10's X4 Pro was made publicly available, though it claims priority in an application filed prior to that date.

52.     It is established that Swell monitors the sale of Wake 10's products closely.

53.     For claims 1, 21, 37 of the '317 Patent to cover the functionality of the X4 Pro, claims 1, 21, and 37 would have to be deemed to have exceeded the scope of its specification and drawings.

54.     Therefore, if the '317 Patent is found to cover the X4 Pro's functionality, the '317 Patent would be invalid pursuant to 35 U.S.C. §112.

55.     Alternatively, claims 1, 21, and 37 of the '317 Patent should be invalid pursuant to 35 U.S.C. §103, as at least the Nauticurl Flex product was published and publicly available for sale prior to the priority date of the '317 Patent and its parent patent, and the Wake 10 X4 Pro was made publicly available prior to the filing of the '317 Patent.  Upon information and belief, additional prior art exists which would invalidate the '317 Patent under 35 U.S.C. §103.  Exhibit O.

56.     Wake 10 is entitled to a judgement declaring that the '317 Patent is invalid.

**PRAYER FOR RELIEF**

WHEREFORE, Wake 10 prays for judgment in their favor against Swell as follows:

(a) A declaration that Wake 10's products, including the X4 Pro, do not infringe United States Patent No. 11,840,317;

(b) A declaration that the '317 Patent is invalid;

(c) For attorney's fees and costs;

(d) Such other and further relief as this Court or a jury may deem just and proper.

**JURY TRIAL DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Wake 10 hereby demands a trial by jury of all issues so triable.

Date:  May 3, 2024

Respectfully submitted,

s/ Christopher DeBacker
Christopher DeBacker (Kansas Bar NO. 24095)
chris@midwetsip.com
Mark Brown (Kansas Bar No. 9638)
mark@midwestip.com

LAW OFFICE OF MARK BROWN, LLC
7225 Renner Rd. Ste. 201
Shawnee, KS 66217
Telephone: (913) 248-4477
Facsimile:  (913) 248-4494

*Attorneys for Plaintiff Wake 10, LLC*